IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MALCOLM BATTLE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-26-1528 |
| CROSSMARK, INC., | * | |
| Defendant. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Crossmark, Inc.'s Motion to Dismiss (ECF No. 13). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion.

## I. BACKGROUND

### A. Factual Background

This case relates to self-represented Plaintiff Malcolm Battle's former employment with Crossmark, Inc. ("Crossmark"). (Compl. at 5, ECF No. 1; Statement of Claim ["Statement"] at 5, ECF No. 1-1).[1] Battle is a black man. (Statement at 2). In September 2024, Battle's managers, who are white women, began scrutinizing Battle's use of his company credit card. (Id.). One Travel and Expense Analyst, Nancy Italia, emailed Battle on September 27, 2024, explaining that she "thought [Battle's manager] agreed [certain expenses] do not [need] to be paid," (id. at 7), but the "repeated back-

[1] Citations to page numbers refer to the pagination system assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

and-forth" between Battle and his managers about repayment and expense reports continued throughout October and November 2024, (id. at 4).

On December 20, 2024, Battle emailed Kristy Terry, Crossmark's Senior Director of Client Engagement, regarding

> what I believe to be work place "mobbing" . . . I have more information to share on incidents with emails and text messages. And would like to speak to you further about these concerns and come to a positive resolution so that we can work together more efficiently.

(Id. at 8). Terry forwarded this message to Crossmark's Human Resources and Scarlett Collums, a manager who had been scrutinizing Battle's expenses. (Id. at 5, 8). On December 26, 2024, Battle emailed Stephanie Wheeler, another one of his managers, and Collums "Re: Rental Car Bookings," stating, "I have to pay those [rental car expenses] back my personal card is in the mail and they would not accept digital payment options at the time of checkout." (Id. at 5, 9). Collums forwarded this message to Terry, writing that Battle "knowingly and admittedly us[ed] his corporate credit card for personal car rentals," and asking, "[i]s this egregious enough for approval to terminate him?" (Id. at 9). Crossmark fired Battle on that same day, December 26, 2024. (Id. at 2). Battle alleges that the timing of his termination six days after his email complaining of "work place 'mobbing'" shows retaliation.[2] (Id. at 5). He also states that Kaylb Williams, a white male Trainer at Crossmark, was "[n]ot subjected to the same scrutiny for similar practices." (Id.).

---

[2] Battle does not define "work place 'mobbing'" in his email, and the Court is not inclined to assume what type of conduct or behaviors Battle was referring to by using that phrase without additional facts.

Battle filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination (the "EEOC Charge") on February 9, 2025. (EEOC Charge at 3, ECF No. 13-2).[3] In the "Discrimination Based On" field of the EEOC Charge, Battle wrote, "Retaliation." (Id. at 2). Battle identified December 27, 2024 as both the earliest and the latest date that the alleged discrimination took place. (Id.). Under "The Particulars Are," however, Battle wrote, "[i]n or about August 2024, I started complaining to Stephanie's Supervisor Scarlet . . . that I felt discriminated against due to my race and sex. Shortly thereafter, unwarranted and untrue issues with my expense reports were brought to my attention." (Id.). The Complaint does not mention this August conversation. (See generally Compl.; Statement).

**B. Procedural History**

On January 21, 2026, the EEOC issued Battle a Determination and Notice of Rights, giving him the right to sue Crossmark within ninety days of the Determination. (Statement at 10). Battle filed this action on April 20, 2026. (ECF No. 1). He alleges that Crossmark discriminated against him on the basis of race and gender and retaliated

[3] Although a court ordinarily may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), the Court will consider the EEOC Charge in its analysis here because it is integral to Battle's Complaint, (Compl. at 6, ECF No. 1), Crossmark attached it to its Motion to Dismiss, (ECF No. 13-2), and the Parties do not dispute its authenticity, (Compl. at 6, ECF No. 1). See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (holding that a court may consider documents attached to motion to dismiss when they are integral to the complaint and authentic); Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001) (finding that a court may consider documents referred to and relied upon in the complaint "even if the documents are not attached as exhibits"); White v. Mortg. Dynamics, Inc., 528 F.Supp.2d 576, 579 (D.Md. 2007) (finding documents from administrative record integral to plaintiff's discrimination complaint); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994).

against him by terminating his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Maryland Fair Employment Practices Act ("MFEPA"), Md. State Gov't Code §§ 20-601, et seq.[4] (Compl. at 4; Statement at 1–4). On July 15, 2026, Crossmark moved to dismiss Battle's Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).[5] (ECF No. 13). Battle filed a Response in Opposition to Crossmark's Motion to Dismiss on July 24, 2026. (ECF No. 15). Crossmark replied on August 7, 2026. (ECF No. 16).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint

[4] It is not clear which statutory scheme Battle invokes. In his Complaint, he writes the MFEPA as the relevant law, (Compl. at 4), but in his Statement, he articulates Title VII of the Civil Rights Act as the basis for his lawsuit, (Statement of Claim at 1-4, ECF No. 1-1). Crossmark's Motion to Dismiss assumes that Battle filed under both statutes, as will this Court. (Mem. L. Supp. Def.'s Mot. Dismiss at 8 n.1, ECF No. 13-1).

[5] Crossmark also cites Rule 12(b)(1) as a ground for dismissal, arguing that Battle's failure to exhaust administrative remedies leaves this Court without subject matter jurisdiction. (Id. at 1, 12). Rule 12(b)(1), however, is inapplicable here because Title VII's administrative exhaustion requirement is not jurisdictional. See Walton v. Harker, 33 F.4th 165, 175 (4th Cir. 2022) (explaining that "the Supreme Court [has] held that Title VII's exhaustion requirement is a non-jurisdictional 'processing rule, albeit a mandatory one' that must be enforced when properly raised." (quoting Fort Bend Cnty. v. Davis, 587 U.S. 541, 551–52 (2019)); see also Stewart v. Iancu, 912 F.3d 693, 700 (4th Cir. 2019) ("In recent years, the Supreme Court repeatedly has cautioned courts not to 'confuse[] or conflate[]' subject-matter jurisdiction, on the one hand, with the 'essential ingredients of a federal claim for relief,' on the other." (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 503 (2006))).

fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Pleadings drafted by self-represented litigants are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Self-represented

litigants' complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Nonetheless, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,'" Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)), "[t]he Court cannot act as a pro se litigant's 'advocate and develop, sua sponte, statutory and constitutional claims' that the litigant failed to raise on the face of the complaint," Branch v. Machen, No. 3:14-CV-708, 2014 WL 6685497, at *2 (E.D.Va. Nov. 25, 2014) (quoting Newkirk v. Circuit Court of Hampton, No. 3:14-CV-372, 2014 WL 4072212, at *1 (E.D.Va. Aug. 14, 2014)). Therefore, even a self-represented litigant's complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (quoting Iqbal, 556 U.S. at 679).

**B. Analysis**

Crossmark asserts that the Court should dismiss Battle's Complaint because he (1) did not administratively exhaust his discrimination claims; (2) failed to allege different treatment from similarly situated comparators for his discrimination claims; (3) abandoned or conceded all of his claims by not sufficiently opposing the arguments in Crossmark's Motion to Dismiss; and (4) failed to plead a prima facie retaliation claim. (Mem. L. Supp. Def.'s Mot. Dismiss Pl.'s Compl. ["Mot."] at 15–27, ECF No. 13-1). For reasons explained below, the Court will grant Crossmark's Motion.

**1. Counts I and II – Race and Gender Discrimination**

Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's protected characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 348 (2013); Strothers v. City of Laurel, 895 F.3d 317, 326–27 (4th Cir. 2018).[6] A plaintiff can state a claim for discrimination either by direct evidence or through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019); see also Wannamaker-Amos v. Purem Novi, Inc., 126 F.4th 244, 255 (4th Cir. 2025).

The elements of a prima facie discrimination case are "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Ct. of Appeals of Md., 566 U.S. 30 (2012). Although a plaintiff need not "plead facts that constitute a prima facie case" to survive a motion to dismiss, he must nevertheless "allege facts sufficient to state all the elements of [his] claim." Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F.App'x 351, 353 (4th Cir. 2009) (first citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511–15 (2006); and then citing Jorden v. Alt. Res. Corp., 458 F.3d 332, 346–47 (4th Cir. 2006)). In other words,

[6] "[M]FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." Finkle v. Howard Cnty., 12 F.Supp.3d 780, 784 (D.Md. 2014). As such, the legal standards discussed in this Opinion apply to both statutory bases of Battle's Complaint. See, e.g., Linton v. Johns Hopkins Univ. Applied Physics Lab., No. JKB-10-276, 2011 WL 4549177, at *4 (D.Md. Sep. 28, 2011) (applying Title VII case law to analyze MFEPA claims).

the complaint must allege facts that "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" Coleman, 626 F.3d at 190 (citing Iqbal, 556 U.S. at 662). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Bell Atl. Corp., 550 U.S. at 555).

Title VII requires plaintiffs to exhaust their administrative remedies by filing a charge of discrimination with the EEOC before filing suit in federal court. See 42 U.S.C. § 2000e-5(f)(1); see Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. §§ 2000e-5(b), (f)(1)). The EEOC Charge must cover each cause of action asserted in the federal court complaint. See Sydnor, 681 F.3d at 593 ("[T]he 'scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents.'" (quoting Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009))). The exhaustion requirement is "an integral part of the Title VII enforcement scheme," because it puts employers on notice of alleged violations. Id. (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005)). An EEOC charge exhausts a claim "only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" Chacko, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)).

Crossmark argues that Battle failed to exhaust both of his discrimination claims, failed to plead sufficient facts for his discrimination claims, and abandoned the claims by not sufficiently responding to the arguments raised in the Motion to Dismiss. (See generally Mot.; Reply). The Court agrees with Crossmark and will dismiss Battle's claims of race and gender discrimination (Counts I and II).

**a. Administrative Exhaustion in EEOC Charge**

"Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Accordingly, a plaintiff may not litigate claims that were not in the EEOC charge; in other words, the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Sydnor, 681 F.3d at 593 (quoting Jones, 551 F.3d at 300).

An "administrative charge of discrimination does not strictly limit a Title VII suit which may follow," however. Id. at 594 (quoting Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005)). As long as "'a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation,' [he] 'may advance such claims in [his] subsequent civil suit.'" Id. (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). Still, this Court has dismissed discrimination claims when the plaintiff checked only the retaliation box on the EEOC Charge, and the United States Court of Appeals for the Fourth Circuit has affirmed such dismissal. See Mercer v. PHH Corp., 64 F.Supp.3d 727, 737 (D.Md. 2014), aff'd, 641 F.App'x 233 (4th Cir. 2016).

Battle did not exhaust his claims for race and gender discrimination because he did not include either of those claims in his EEOC Charge. The "scope of the plaintiff's" allowable claims "is determined by the charge's contents," Sydnor, 681 F.3d at 593 (quoting Jones, 551 F.3d at 300), and Battle identified only retaliation in the EEOC Charge's "Discrimination Based On" section, (EEOC Charge at 2). That identification

is akin to checking the retaliation box and no other box, as in Mercer, 64 F.Supp at 727. While the EEOC Charge mentions that Battle told his manager he felt "discriminated against due to [his] race and sex," that statement identified neither the parties nor the practices of which Battle complained. (See EEOC Charge at 2). The EEOC Charge thus did not give Crossmark a basis for a "reasonable administrative investigation" of his discrimination claims, as required under Sydnor, 681 F.3d at 594. Therefore, the EEOC Charge did not exhaust Battle's race and gender discrimination claims.

**b. Different Treatment from Similarly Situated Comparators**

Even if the Court were to find that Battle exhausted his discrimination claims based on their relationship to his retaliation claim, Battle's discrimination claims still fail because he did not sufficiently allege different treatment from similarly situated employees of different genders or races.

Prima facie discrimination requires "(1) protected class membership; (2) satisfactory performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). In the Fourth Circuit, a plaintiff "is not required to identify a similarly situated white comparator to prove [his] discrimination claim, so long as [he] can establish an inference of unlawful discrimination through other means." Swaso v. Onslow Cnty. Bd. of Educ., 698 F.App'x 745, 748 (4th Cir. 2017) (citing Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545–46 (4th Cir. 2003)). If a plaintiff relies on a comparator, however, such comparison only establishes different treatment when the plaintiff produces "evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards[,]

and . . . engaged in the same conduct . . . .'" Haynes, 922 F.3d at 223–24 (quoting Haywood v. Locke, 387 F.App'x 355, 359 (4th Cir. 2010); see also McCleary-Evans v. Md. Dep't. of Transp., State Highway Admin., 780 F.3d 582, 586 (4th Cir. 2015) (affirming dismissal of race and gender discriminatory failure-to-hire claims where plaintiff alleged that an employee of a different race was hired while plaintiff was not, but plaintiff failed to demonstrate that the hired employee was similarly situated to plaintiff in all relevant aspects and, thus, plaintiff failed to show that any different treatment resulted from discrimination).

Here, Battle does not provide sufficient factual details about his alleged comparators from which the Court can infer that he was treated differently from similarly situated employees. While Battle mentions that Kaylb Williams, a white male, was "not subjected to the same scrutiny for similar practices," he does not include any further detail about how Williams's practices were similar or how Williams was similarly situated to Battle. (See Statement at 5). Specifically, Battle includes no information about Williams's supervisor or responsibilities, nor does Battle expand on Williams's "similar practices" that led to discipline or lack thereof. (See id.). Battle identifies no comparator at all for his gender discrimination claims, nor does he "establish an inference of unlawful discrimination through other means." Swaso, 698 F.App'x at 748; (see generally Compl.; Statement; Opp'n). Battle therefore fails to allege a prima facie case of unlawful discrimination based on either race or gender.

**c. Abandonment of Discrimination Claims**

Even if Battle had successfully alleged race and gender discrimination claims, he abandoned those claims by failing to address Crossmark's arguments regarding the discrimination claims in its Motion to Dismiss.

It is customary practice in this Court to deem claims abandoned to the extent a plaintiff fails to respond to a motion to dismiss those claims. See, e.g., Grice v. Colvin, 97 F.Supp.3d 684, 707 (D.Md. 2015); Grinage v. Mylan Pharm., Inc., 840 F.Supp.2d 862, 867 n.2 (D.Md. 2011); Ferdinand-Davenport v. Child.'s Guild, 742 F.Supp.2d 772, 783 (D.Md. 2010); Cox v. U.S. Postal Serv. Fed. Credit Union, No. GJH-14-3702, 2015 WL 3795926, at *6 (D.Md. June 17, 2015); Wingler v. Fid. Invs., No. WDQ-12-3439, 2013 WL 6326585, at *3 (D.Md. Dec. 2, 2013); Stewart Title Guar. Co. v. Sanford Title Servs., LLC, No. ELH-11-620, 2011 WL 5547997, at *3 (D.Md. Nov. 10, 2011). This Court has previously held that a plaintiff abandoned claims when his response was "entirely conclusory[] and contained no specific arguments addressing the defendant['s] points." Bancroft Com., Inc. v. Goroff, No. CCB-14-2796, 2014 WL 7409489, at *7 (D.Md. Dec. 31, 2014); see also Hardaway v. Equity Residential Mgmt., LLC, No. DKC 13-149, 2016 WL 3957648, at *6 (D.Md. July 22, 2016) (reiterating that the court may treat a defendant's arguments as uncontested and dismiss the complaint when the plaintiff simply "repeat[s] many of the same conclusory allegations in their opposition brief that appeared in the . . . amended complaint"), aff'd, 675 F.App'x 381 (4th Cir. 2017).

Here, Battle does not respond in more than a conclusory manner to Crossmark's argument that he failed to exhaust his discrimination claims. (See Opp'n at 1). Battle

does not deny that the "Discrimination Based On" section of the EEOC Charge included only retaliation, and he does not point to any part of the Charge that indicates that he reported race or gender discrimination claims in addition to retaliation. (See id.). Battle's Opposition states only that the Charge "encompass[ed] claims of race discrimination [and] gender discrimination," and points to the Notice of Right to Sue as evidence that he exhausted all three claims. (Id.). The question, however, is not whether Battle received the Notice, but whether the claims alleged in his complaint fall within the scope of the allegations listed in his EEOC Charge. See Sydnor, 681 F.3d at 593 (quoting Jones, 551 F.3d at 300). Battle's Opposition does not argue that the Charge included any claim other than retaliation. (See Opp'n). Therefore, Battle concedes Crossmark's argument that he failed to exhaust his race and gender discrimination claims.

Battle also concedes Crossmark's argument that he fails to allege different treatment from similarly situated employees. (Mot. at 6). The only response Battle makes to this argument is that Crossmark "ignores the concrete, chronological facts pled in the Complaint." (Opp'n at 2). This statement "contain[s] no specific arguments addressing the defendant['s] points." Bancroft, 2014 WL 7409489, at *7. Moreover, as discussed above, the facts in the Complaint fail to show different treatment from similarly situated comparators, and the Opposition does not cure this defect; rather, it includes only this conclusory sentence about the sufficiency of Battle's discrimination

claims. (See generally Opp'n). Therefore, Battle has abandoned his discrimination claims, which leaves only his claim for retaliation.[7]

**2. Count III – Retaliation**

Next, Battle brings a claim for retaliation. (Compl. at 5). A plaintiff may establish a Title VII retaliation claim "either 'through direct and indirect evidence of retaliatory animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)). "Direct evidence 'is evidence which, if believed, would prove the existence of a fact without any inference or presumptions.'" Walton v. Harker, 33 F.4th 165, 176 (4th Cir. 2022 (quoting O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996))). Battle does not allege direct evidence of retaliation. Instead, he alleges that "suspicious temporal proximity" supports his retaliation claim because he was terminated six days after complaining about "workplace 'mobbing'" and expense report delays. (Statement at 5).

[7] Crossmark argues that Battle also abandoned his retaliation claim, (Def.'s Reply Mem. L. Supp. Def.'s Mot. Dismiss Pl's. Compl. at 7, ECF No. 16), but Battle provides more developed counterarguments for his retaliation than he does for his discrimination claims, (see Pl's. Mem. L. Opp'n Def's. Mot. Dismiss at 2, ECF No. 15 (citing cases and breaking retaliation into elements to address Crossmark's arguments about each)). While largely conclusory, Battle's retaliation-related counterarguments are more comprehensive than the arguments by self-represented litigants that this Court has deemed abandoned. Compare Bancroft Com., Inc. v. Goroff, No. CCB-14-2796, 2014 WL 7409489, at *7 (D.Md. Dec. 31, 2014) (finding arguments abandoned when opposition was three sentences long), and Cox v. U.S. Postal Serv. Fed. Credit Union, No. GJH-14-3702, 2015 WL 3795926, at *6 n. 5 (D.Md. June 17, 2015) (deeming arguments abandoned when self-represented litigant filed no reply), with Hardaway v. Equity Residential Mgmt., LLC, 2016 WL 3957648, at *6 (D.Md. July 22, 2016) (declining to exercise discretion to find arguments abandoned and instead proceeding with 12(b)(6) analysis). Given the generous standard for self-represented pleadings, the Court does not find that Battle abandoned his retaliation claim.

The Court will, therefore, evaluate Battle's claim under the burden-shifting framework set forth in McDonnell Douglas.

To prevail under the McDonnell Douglas framework, Battle must put forth a prima facie case of retaliation by establishing that: (1) he engaged in protected activity; (2) Crossmark took adverse action against him; and (3) a causal relationship exists between the protected activity and the adverse action. Foster, 787 F.3d at 250 (citation omitted). If Battle succeeds in establishing a prima facie case of retaliation, the burden shifts to Crossmark "to show that [Crossmark's] purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Id. If Crossmark does so, "the burden shifts back to [Battle] to rebut [Crossmark's] evidence by demonstrating that [Crossmark's] purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

Crossmark argues that the Court should dismiss Battle's retaliation claim because his December 20, 2024 email complaint about expense report delays and "work place 'mobbing'" does not constitute protected activity and because Battle's managers began scrutinizing his expense reports and pursuing disciplinary action against him before the December 20, 2024 email. (Mot. at 23–28; Reply at 3–6). As such, according to Crossmark, Battle cannot show prima facie retaliation. (Mot. at 23–26; Reply at 3–6). The Court disagrees with Crossmark because the EEOC Charge alleges potentially protected activity that preceded the heightened scrutiny into Battle's expense reports, (see EEOC Charge at 2); thus, Battle could, theoretically, amend his Complaint to allege a prima facie case of retaliation. Nevertheless, Battle's retaliation claim fails because

Crossmark has shown a legitimate non-retaliatory reason for the firing, which Battle has not shown was pretextual. The Court will therefore dismiss the retaliation claim.

**a. Prima Facie Retaliation in Battle's Complaint**

Battle fails to plead a prima facie case of retaliation because, although termination "indisputably constitute[s] an adverse employment action," King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003), Battle does not plead facts showing protected activity or causation, (see generally Statement). Protected activity entails communication of "a belief that the employer has engaged in . . . a form of employment discrimination" based on a protected class. Crawford v. Metro. Gov't of Nash. & Davidson Cnty., 555 U.S. 271, 276 (2009). The communicated belief must be clear enough in its allegation of discrimination that "the employer understood or should have understood" that the plaintiff was opposing activity prohibited by Title VII. Burgess v. Bowen, 466 F.App'x 272, 282 (4th Cir. 2012). Thus, "general workplace grievance[s]" are not protected activity. Parker v. Ciena Corp., 787 F.App'x 817, 820 (4th Cir. 2019); see also Bowman v. Balt. City Bd. of Sch. Comm'rs., 173 F.Supp.3d 242, 248 (D.Md. 2016) ("General complaints of unfair treatment are not protected activity.").

Here, the only event that Battle describes in the Complaint as protected activity is the December 20, 2024 email complaining of expense report delays and "work place 'mobbing.'" (Statement at 4). That email does not include any discussion of Battle's membership in a protected class; rather, the "excess delays" and "mobbing" by supervisors that he describes constitute nothing more than general grievances that fail to notify an employer that an employee is complaining of behavior prohibited under Title VII. (See id. at 8); see Parker, 787 F.App'x at 820; Bowman, 173 F.Supp.3d at

248. Battle's Complaint discusses no other interactions that could constitute protected activity. (See generally Compl.; Statement). Accordingly, Battle fails to sufficiently allege protected activity.

As to the third prong, Battle's Complaint seeks to establish causation through temporal proximity. (Statement at 5). "[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is 'very close.'" Jenkins v. Gaylord Ent. Co., 840 F.Supp.2d 873, 881 (D.Md. 2012) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)). But "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff . . . engaged in any protected activity, an inference of retaliation does not arise." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 309 (4th Cir. 2006) (quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001)).

Battle's Complaint fails to show causation. Battle relies on "suspicious temporal proximity" between the December 20 email, which Battle alleges was protected activity, and his December 27 termination to establish causation. (Statement at 5). But the timeline in the Complaint indicates that Crossmark's management engaged in "heightened scrutiny" of Battle's expense reports before that email, from September through November 2024. (Id. at 4). Therefore, as in Francis, gradual adverse actions began before the alleged protected activity in this case, and, thus, "an inference of retaliation does not arise." 452 F.3d at 309.

**b. Amendment**

Battle seeks to amend his Complaint in the event the Court finds it deficient. (Reply at 2). Amendment could address the initial defects in the Complaint as to the lack of protected activity and causation in Battle's retaliation claim. Specifically, the EEOC Charge states that "in or about August 2024, [Battle] started complaining to Stephanie's Supervisor Scarlet (last name unknown), that [he] felt discriminated against due to [his] race and sex. Shortly thereafter, unwarranted and untrue issues with [Battle's] expense reports were brought to [his] attention . . . ." (EEOC Charge at 2). The August conversation likely constitutes protected activity because Battle's statement that he "felt discriminated against due to [his] race and sex" points to activity prohibited by Title VII and communicates a belief that discrimination based on a protected class had occurred. (Id.); see Burgess, 466 F.App'x at 282; Crawford, 555 U.S. at 276. The timing of the August conversation also negates Crossmark's argument about lack of causation because the conversation allegedly occurred before Battle was "subjected to heightened scrutiny in September of 2024" and before Crossmark "repeatedly pursued disciplinary action against him in October and November of 2024." (Mot. at 27). If Battle complained about discrimination in the month immediately before the scrutiny began, the "gradual adverse actions" would have begun after the protected activity, not before, as Crossmark argues. (Mot. at 27 (quoting Francis, 452 F.3d at 309)).

The duration between the August conversation and Battle's termination, however, is likely too long to show causation. While there is no bright-line maximum duration between protected activity and adverse action, the Fourth Circuit has found that "a time period of three to four months is too great to establish a causal link through

temporal proximity alone," while "[a] ten-week time period can be sufficient to establish a prima facie case of retaliation." Emami v. Bolden, 241 F.Supp.3d 673, 681 (E.D.Va. 2017) (first citing Pascual v. Lowe's Home Ctrs., Inc., 193 F.App'x. 229, 233 (4th Cir. 2006); and then citing Silva v. Bowie State Univ., 172 F.App'x. 476, 478 (4th Cir. 2006)). Here, the time between August and December 2024 would likely be too long because it is more than three or four months. Id. But even if the Court assumes that Battle could successfully show protected activity and causation by amending his Complaint, the retaliation claim still fails because Crossmark has put forth a legitimate non-discriminatory reason for the termination that Battle does not show to be pretextual.

**c. Burden Shifting**

If Battle were to succeed in establishing a prima facie case of retaliation, the burden would shift to Crossmark "to show that [Crossmark's] purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Foster, 787 F.3d at 250. If Crossmark does so, "the burden shifts back to [Battle] to rebut [Crossmark's] evidence by demonstrating that [Crossmark's] purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Hill, 354 F.3d at 285).

Crossmark has met its burden of showing that the "purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." Id.; (see Mot. at 20). As Crossmark notes in its Motion, Battle's own exhibits show his admission via email that he had used the company credit card for a personal car rental. (Mot. at 20; Statement at 9). In the email "Re: Rental Car Bookings," Battle stated, "I have to pay those [rental car expenses] back my personal card is in the mail and they would not accept digital

payment options at the time of checkout." (Statement at 9). Battle's manager forwarded that email to Human Resources, stating that "[Battle] is knowingly and admittedly using his corporate credit card for personal car rentals," and asking, "[i]s this egregious enough for approval to terminate him?" (Id.). After these emails, Crossmark told Battle that he was fired for violating Crossmark's Travel, Entertainment, and Business Expense Policy (the "T&E Policy"). (Statement at 2). Violation of the T&E Policy is a legitimate, non-retaliatory reason for termination. See Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 206–07 (4th Cir. 2014) (finding failure to follow company policy a legitimate, non-retaliatory reason for termination); Mercer, 641 F.App'x at 240 (finding "breach of the [employer's] ethics policy" a legitimate reason for plaintiff's termination); Tomasello v. Fairfax Cnty., No. 1:15-CV-95, 2016 WL 165708, at *10 (E.D.Va. Jan. 13, 2016) (finding plaintiff's violation of a series of employer's rules a legitimate reason for plaintiff's transfer).

The burden then shifts to Battle to show that the T&E Policy violation was a pretext for retaliation, and Battle has not met that burden. See Foster, 787 F.3d at 250. Battle states in his Complaint and Opposition that the reason is pretextual, but he includes no factual support for that conclusory assertion. (See generally Compl.; Statement; Opp'n). Battle's most detailed allegation of pretext comes in his Opposition, where he states that Crossmark's justification "is a mere pretext for unlawful race and gender discrimination. [Crossmark] used this unsubstantiated allegation [of violating the T&E Policy] as a cover to terminate [Battle]. . . . Discovery will reveal that [Crossmark's] sudden investigation and subsequent termination were completely driven by retaliatory and discriminatory animus." (Opp'n at 2). Battle does not, however,

allege any facts to support these statements. (See generally Compl.; Statement; Opp'n). Therefore, Battle not only fails to provide "direct or circumstantial evidence that calls into question [Crossmark's] explanation," Mercer, 641 F.App'x at 240, but he also provides evidence supporting the explanation's legitimacy in his Complaint via the email in which he admitted to using the company card for a personal car rental, (Statement at 9). Therefore, Battle will not be able to prove that Crossmark's stated reason for terminating him was pretextual, so amendment would be futile and this Court will dismiss Battle's Complaint with prejudice. United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (finding amendment futile when amended complaint could not survive motion to dismiss for failure to state claim); Edell & Assocs., P.C. v. Law Offs. of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001) (holding that leave to amend is properly denied when amendment would be futile).

## III. CONCLUSION

For the foregoing reasons, the Court will grant Crossmark's Motion to Dismiss (ECF No. 13). A separate Order follows.

Entered this 12th day of November, 2026.

/s/
George L. Russell, III
Chief United States District Judge